IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAYMOND T. DUNFORD,              *

    Plaintiff,                   *

v.                               *        Civil Action No. BPG-10-0124

MICHAEL J. ASTRUE,               *
Commissioner of
Social Security,                 *

    Defendant.                   *

*   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Plaintiff, Raymond Tracy Dunford, brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382.  Currently pending are plaintiff's Motion for Summary Judgment and defendant's Motion for Summary Judgment. (ECF Nos. 15, 28.)  These motions have been referred to the undersigned with the parties' consent, pursuant to 28 U.S.C. § 636 and Local Rule 301.  No hearing is deemed necessary.  Local Rule 105.6.  For the reasons discussed below, the court denies plaintiff's Motion for Summary Judgment (ECF No. 15) and grants defendant's Motion for Summary Judgment. (ECF No. 28.)

## I.   **Background**

On December 14, 2007, plaintiff Raymond Tracy Dunford filed
a claim for a period of disability and disability insurance
benefits ("DIB") and for Supplemental Security Income ("SSI").
(R. at 103-113.)  Plaintiff alleged that he became disabled on
July 23, 2007 due to bad knees, a bad right ankle, and lower back
problems.  (R. at 135.)  After plaintiff's application was denied
initially and upon reconsideration (R. at 69-73, 76-79),
plaintiff appeared for a hearing before Administrative Law Judge
("ALJ") Judith A. Showalter on May 14, 2009. (R. at 19-61.)  In a
decision dated July 20, 2009, ALJ Showalter denied plaintiff's
application for benefits. (R. at 8-18.)

On December 11, 2009, the Appeals Council held there was no
basis for granting review of the ALJ's decision.  (R. at 1-3.)
Plaintiff now petitions this court for summary judgment reversing
the ALJ's decision and awarding plaintiff the benefits he has
requested. (ECF No. 15.)  In the alternative, plaintiff asks
this court to remand the matter to the Social Security
Administration for further proceedings.  (Id.)  The Commissioner
argues that his final decision is both reasonable and supported
by substantial evidence and should be affirmed.  (ECF No. 28.)

## II.  **Standard of Review**

The role of this court on review is to determine whether the
ALJ applied correct legal standards and whether substantial

evidence supports the ALJ's decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966); accord Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). It is more than a scintilla but less than a preponderance of the evidence. Id. It is evidence sufficient to justify a refusal to direct a verdict if the case were before a jury. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Id.

In determining whether a claimant is disabled, the Commissioner has promulgated regulations that set forth the following five-step analysis. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

(1) The ALJ determines whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. § 404.1571 and § 416.971 et seq. If so, the claimant is not disabled.

(2) If not, the ALJ examines the physical and/or mental impairments alleged by the claimant and determines whether these impairments meet the durational and severity requirements set forth in 20 C.F.R. § 404.1520 and § 416.920. If not, the claimant is not disabled.

(3) If so, the ALJ considers whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, known as the Listing of
Impairments.  If so, the claimant is disabled.

(4)   If not, the ALJ considers whether the claimant retains
the residual functional capacity ("RFC") to do past
relevant work ("PRW").  If so, the claimant is not
disabled.

(5)   If not, the ALJ determines whether the claimant is
capable of some other work based on the claimant's RFC,
age, education, and past work experience.  The
Commissioner bears the burden of proof at step five.
Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).  If
the claimant is not capable of other work, the claimant
is disabled.

## III. **Discussion**

In his memorandum in support of his motion for summary
judgment, plaintiff claims that: (1) substantial evidence did not
support the ALJ's determination that plaintiff did not meet
Listing 1.02 (Major dysfunction of a joint)(ECF No. 15-2 at 19);
(2) the ALJ did not properly weigh medical evidence (Id. at 30);
(3) the ALJ failed to properly consider plaintiff's pain (Id. at
36);  and (4) the ALJ erred in concluding that plaintiff could
perform a range of sedentary work. (Id. at 30.)

The Commissioner responds that he is entitled to judgment as
a matter of law because the ALJ's final decision that plaintiff's
impairments, "while significant, were not disabling" is supported
by substantial evidence in the record.  (ECF No. 28-1 at 9.)
Specifically, the Commissioner argues: (1) the standard of
judicial review under the Social Security Act ("Act") is highly
deferential (Id. at 8); (2) the standard of disability under the

4

Act is stringent (Id.); (3) substantial evidence supports the
ALJ's determination that plaintiff's impairments did not meet a
listing (Id. at 10); (4) the ALJ properly determined that
plaintiff could perform a range of sedentary work (Id. at 13);
and (5) the ALJ properly found that plaintiff's subjective
complaints of disabling pain were not fully credible. (Id. at
18.)

### A. The ALJ's Determination that Plaintiff's Impairments did not Meet or Medically Equal a Listed Impairment

Plaintiff alleges that substantial evidence did not support
the ALJ's determination that plaintiff did not meet or equal
Listing 1.02 (Major dysfunction of a joint). (ECF No. 15-2 at
19.) Specifically, plaintiff alleges the ALJ's finding that
plaintiff did not have "an inability to ambulate effectively as
also required by the listing" was flawed because the ALJ
acknowledged an x-ray report documenting a "somewhat unusual"
medical malleolus in the plaintiff's right foot as well as the
report of consultative physician Dr. Mohammad H. Zamani, M.D.,[1]
who stated that plaintiff "walked with his foot inverted to the
side and terrible limping," yet still concluded that plaintiff
did not meet the "specific requirements of the Listing."[2] (Id.

---

1 Dr. Mohammad H. Zamani, M.D. conducted a consultative
physical examination of plaintiff on July 29, 2008, at the
request of defendant (R. at 277-78.)

2 Plaintiff also alleges it was erroneous not to "fully
discuss" Dr. Zamani's other findings that plaintiff was "almost

at 20-21 (citing R. at 12).)

The Commissioner responds that the ALJ properly determined that plaintiff's impairments did not meet any Listing, including Listing 1.02, because substantial evidence in the record showed that plaintiff could effectively ambulate. (Id. at 10-11.) The Commissioner cites plaintiff's acknowledgement that no physician ever prescribed the use of a cane as strong evidence that plaintiff did not meet Listing 1.02. (Id. at 11.)

To meet Listing 1.02 for major dysfunction of a joint or joints, a claimant must show:

> [G]ross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony deconstruction, or ankylosis of the affected joint(s). With . . . [i]nvolvement of one of the major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02. The "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently

---

paralyzed to the lower extremities." (ECF No. 15-2 at 21.) The Comissioner asserts that Dr. Zamani's examination does not support plaintiff's contention that his impairment met Listing 1.02 because, as the ALJ noted, his statement that plaintiff's lower extremities were "almost paralyzed" was inconsistent with plaintiff's testimony that he drives eight or nine friends to and from work each day. (ECF No. 28-1 at 12-13.) The weight afforded to Dr. Zamani's opinion by the ALJ is discussed in Part III.B.

initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 100B2b(1),(2) (emphasis added).

The record in this case supports the ALJ's conclusion at Step Three of the sequential analysis that plaintiff did not meet a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff testified that he does not use any assistive device for walking and that no doctor has ever recommended he use a cane or any other assistive device. (R. at 41.) He testified that he was able to carry out his activities of daily living, such as showering, bathing, and dressing himself; preparing his own meals; doing his own laundry (while sitting down); making his bed; and grocery shopping (using a shopping cart) and carrying the groceries to his apartment from his car. (R. at 42, 44, 45-46.) Plaintiff also testified that he drives eight to nine friends to and from work each day, earning approximately $40 per day. (R. at 47.) Furthermore, plaintiff testified that he drove himself to the hearing. (R. at 26.)

The ALJ adequately supported her conclusion that plaintiff did not suffer from an inability to ambulate effectively, and therefore, that he could not meet Listing 1.02, by citing such evidence in the record. For example, the ALJ noted plaintiff's testimony that he does not use any assistive device for walking. (R. at 12). This court has previously affirmed an ALJ's finding that an individual did not meet Listing 1.02 on similar facts.

See, e.g., Allen v. Barnhart, No. BPG-02-4135, slip op. at 6-7
(D. Md. Dec. 17, 2004) (substantial evidence existed to support
the conclusion that plaintiff did not suffer from an inability to
ambulate effectively where plaintiff could walk 50 yards without
a cane and was still able to carry out his activities of daily
living); see also Brown v. Astrue, 2001 WL 255814, at *3 (D. Md.
Jan. 25, 2011) (no evidence of inability to ambulate effectively
existed where plaintiff did not need "two canes, two crutches, or
a walker").

Next, plaintiff asserts the ALJ erred by not explicitly
mentioning all of the examples encompassed in the definition of
ineffective ambulation.  (ECF No. 15-2 at 21-22.)  The
Commissioner responds that an ALJ could never mention "all"
examples of ineffective ambulation because the list of examples
is not exhaustive.  (ECF No. 28-1 at 13.).

Each listed impairment is defined in terms of several
specific medical signs, symptoms, or laboratory test results.
"For a claimant to show that his impairment matches a listing, it
must meet all of the specified medical criteria." Sullivan v.
Zebley, 493 U.S. 521, 530 (1990).  The "inability to ambulate
effectively" is one specified medical criterion for Listing 1.02.
See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.02.  Therefore, it was
not reversible error for the ALJ not to cite all of the examples
encompassed in the definition of ineffective ambulation, because,

once the ALJ found plaintiff's testimony was inconsistent with one of the examples, he necessarily could not meet the criterion of ineffective ambulation, and therefore could not meet the Listing.[3]  See Allen, No. BPG-02-4135, slip op. at 4, n.1 (not reversible error for ALJ to only address one criterion of the Listing because unless plaintiff met the criterion of the "inability to ambulate effectively," he necessarily could not meet the listing).  Furthermore, the Social Security Regulations explicitly state the examples provided to illustrate ineffective ambulation are not exhaustive.  See 20 C.F.R. Pt. 404, subpt. P, app. 1., § 1.00(B)(2)(b)(2) ("[E]xamples of ineffective ambulation include, but are not limited to, the ability to walk without the use of a walker, two crutches or two canes . . . the inability to carry out routine ambulatory activities, such as shopping and banking. . . .") (emphasis added).  In sum, the ALJ's conclusion that because plaintiff did not exhibit an "inability to ambulate effectively," he did not meet the Listing was supported by substantial evidence.  Accordingly, there is no

---

    3 Furthermore, plaintiff's testimony is also inconsistent with additional examples of the criterion of ineffective ambulation provided in the Listing. For example, plaintiff testified he went shopping for his own groceries and was able to carry them to his apartment from his car.  (R. at 46.)  His ability to independently carry out these activities is inconsistent with the examples of ineffective ambulation provided in Listing 1.02.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 100B2b(2) ("[E]xamples of ineffective ambulation include . . . the inability to carry out routine ambulatory activities, such as shopping and banking. . . .").

basis for remand on this issue.

B. **The ALJ's Evaluation of the Medical Source Opinions**

Plaintiff next argues the ALJ improperly evaluated the medical evidence of record because she gave "controlling weight" and "great weight" to the two State Agency assessments and "rejected the treating physician, Dr. Madarang-Lewis, as well as two consultative doctors that the Defendant referred Plaintiff to for examination, namely Dr. Ajit Kurup and Dr. Mohammad H. Zamani." (ECF No. 15 at 30-36.)   The Commissioner responds that plaintiff "erroneously alleges that the ALJ relied solely on the opinions of two state agency physicians" because "the ALJ relied on other evidence of record, including Dr. Kurup's opinion, the objective medical evidence, Dunford's treatment regimen, and his daily activities." (ECF No. 28-1 at 15.)   The Commissioner also contends opinions from state agency physicians are entitled to significant weight because they are "highly qualified medical sources and experts in Social Security disability adjudication." (Id. at 14 (citing 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)).)

Ordinarily, the testimony of treating physicians is given great weight in disability determinations.[4]   A treating

---

[4] See 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more

physician's opinion, however, should be given significantly less weight if it is inconsistent with substantial evidence in the record.  <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996).  If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must determine what weight, if any, to give that opinion and give "good reasons" for that decision.  20 C.F.R. § 404.1527(d)(2).[5]  Medical opinions by sources other than the claimant's treating physician (such as those made by a consultative physician) are similarly evaluated under the relevant statutory factors.  20 C.F.R. §§ 404.1527(d), 416.927(b),(d).

Administrative law judges are not bound by any findings made by state agency physicians or other medical specialists and must consider findings and opinions of state agency physicians or

---

weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed . . . picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone."); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517-18 (4th Cir. 1987) (attending physician's rule, as applied in the Fourth Circuit, requires that the opinion of a claimant's treating physician be given great weight and may be disregarded only if there is persuasive contradictory evidence).

    5 In determining how much weight to give a medical opinion, the ALJ should consider (1) the length of the treatment relationship and frequency of the examination, (2) the nature and extent of treatment, (3) the evidence supporting the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the physician's specialization.  20 C.F.R. §§ 404.1527(d)(1-

other medical specialists as opinion evidence.  20 C.F.R. §§ 404-
1527(f)(2)(i), 416.927(f)(2)(i).  The ALJ will evaluate the
findings of state agency physicians or other medical specialists
using the same relevant factors employed to afford weight to the
opinion of a treating physician.  20 C.F.R. §§ 404-
1527(f)(2)(ii), 416.927(f)(2)(ii).  If the treating source's
opinion is not given controlling weight, the ALJ must explain in
the decision the weight given to the opinion of such physicians
or specialists as the ALJ must do for any opinion from a treating
or non-treating source.  Id.

In this case, the ALJ sufficiently evaluated the medical
evidence in accordance with the regulatory guidelines and
adequately explained the weight she allocated to the opinion of
plaintiff's treating physician, two consultative physicians, and
the opinion of two state agency physicians the Commissioner
referred plaintiff to for examination.  The ALJ's evaluation of
each type of medical evidence is discussed below.

First, as the ALJ noted, the only treating source opinion in
the record is a medical report form completed by plaintiff's
primary care physician, Dr. Madarang-Lewis, in December 2007.
(R. at 15, 271-74.)  The ALJ sufficiently articulated her
decision to afford little weight to the opinion of Dr. Madarang-
Lewis.  She stated that, while she recognized that Dr. Madarang-

---

6), 416.927(d)(1-6).

Lewis was a treating physician, she declined to give "controlling weight, or even great weight," to the medical report form completed by Dr. Madarang-Lewis because it was "not supported by substantial evidence and [was] inconsistent with the state agency opinion evidence." (R. at 16.)  The ALJ noted that although Dr. Madarang-Lewis had been treating plaintiff since 2004, she completed the form in December 2007 after seeing the plaintiff for the first time in more than two years. (Id.)  She also observed that the notes for the December 2007 visit did not justify the extreme functional limitations indicated on the medical report form.  (Id.)  Furthermore, the ALJ noted that Dr. Madarang-Lewis did not have a consistent treatment history with the plaintiff or any specialized training that would warrant affording a greater degree of credibility to Dr. Madarang-Lewis's opinion.  (Id.)  In short, the ALJ's decision to afford Dr. Madarang-Lewis's opinion less than controlling weight was supported by substantial evidence.

Next, the ALJ acknowledged and evaluated the opinions of the physicians who conducted consultative physical examinations of plaintiff and sufficiently explained the weight she gave to them. First, the ALJ addressed the opinion of Dr. Ajit Kurup, M.D., who conducted a consultative physical examination of plaintiff in April 2008 at the request of defendant. (R. at 14, 243-46.)  Dr. Kurup reported that plaintiff complained of low back, neck, knee,

13

and right ankle pain.  (R. at 243.)  The ALJ noted Dr. Kurup's conclusions,[6] and gave "some weight" to his opinion to the extent it was consistent with the residual functional capacity as found. (Id.)  Next, the ALJ addressed the opinion of Dr. Mohammad H. Zamani, M.D., who conducted a second consultative physical examination of plaintiff on July 29, 2008, at the request of defendant. (R. at 15, 277-78.)  Although the ALJ acknowledged Dr. Zamani's observation that plaintiff was "unable to do any gainful employment," the ALJ concluded that this observation should not be afforded "great weight."  (R. at 15.)

The ALJ sufficiently explained her conclusion not to afford "great weight" to Dr. Zamani's opinion.  First, the ALJ correctly noted that opinions regarding a claimant's ability to work are administrative findings reserved to the Commissioner.  (R. at 15 (citing SSR 96-5p).)  The ALJ also observed that Dr. Zamani's findings failed to address specific functional limitations (such as sitting) to explain why plaintiff would not be able to do sedentary work.  (R. at 15.)  Finally, the ALJ noted that Dr. Zamani's conclusion that plaintiff's lower extremities were "almost paralyzed" was inconsistent with plaintiff's testimony

---

6 Specifically, the ALJ noted Dr. Kurup's conclusion that plaintiff could not perform any activity which required standing or walking for more than five to ten minutes at a time, and that he could not lift more than 15 pounds.  (R. at 14.)  She observed that Dr. Kurup did not indicate that plaintiff had any restrictions on sitting and did not opine as to how much total standing or walking the plaintiff could do in an 8-hour work day.

that he drives friends to and from work each day.  (Id.)  In
short, the ALJ relied on substantial evidence in the record to
afford Dr. Kurup's conclusions "some weight" and not afford
"great weight" to Dr. Zamani's opinions.

The ALJ also addressed the state agency assessments
conducted by Dr. Feld, M.D., and Dr. Kramer, M.D. (R. at 250-57,
261-68), affording them "great weight" to the extent they were
consistent with the residual functional capacity as found.  (R.
at 16.)  She noted that medical evidence, consultative
examination reports, and hearing testimony all supported a
finding that plaintiff could stand or walk no more than two hours
a day.  (Id.)  In sum, the ALJ's evaluation of the state agency
assessments was supported by substantial evidence and was in
accordance with statutory procedure.  See 20 C.F.R. §§ 404-
1527(f)(2)(ii), 416.927(f)(2)(ii). Accordingly, there is no basis
for remand on this issue.

### C. **The ALJ's Evaluation of Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to give proper
consideration to plaintiff's pain and conduct a full and proper
two-step pain analysis when she concluded that plaintiff's
assertions of pain were "not credible."  (ECF No. 15-2 at 36,
38.)  The Commissioner responds that the ALJ properly concluded
that plaintiff's subjective complaints of pain were not credible

_____

(Id.)

because they were inconsistent with the objective medical
evidence, plaintiff's treatment regimen, and his daily
activities.  (ECF No. 28-1 at 18.)

The evaluation of pain is a two-step process in which the
ALJ must first determine whether there is objective evidence
showing the existence of a medical impairment that could
reasonably be expected to produce the pain alleged.  Craig, 76
F.3d at 594.  Second, once the ALJ concludes that a claimant has
a medical impairment that can reasonably be expected to produce
the pain claimed, the ALJ must evaluate the intensity and
persistence of claimant's alleged pain based on all the evidence
in the record, including plaintiff's testimony.  Id. at 595.
Factors to be considered at step two of the credibility analysis
include:  (1) the claimant's daily activities; (2) the location,
duration, frequency, and intensity of the pain or other symptoms;
(3) precipitating or aggravating factors; (4) the type, dosage,
effectiveness, and side effects of medication; (5) treatments and
other measures taken for relief; and (6) other factors concerning
functional limitations and restrictions.  20 C.F.R. §§
404.1529(c)(3), 416.929(c)(3).  The ALJ must refer specifically
to evidence informing his conclusion, including the reasons for
rejecting evidence that contradicts his or her findings.
See, e.g., Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)
(ordering remand because the ALJ failed to adequately explain the

16

basis of his findings).

A review of the ALJ's opinion reveals that she properly evaluated plaintiff's pain in accordance with the two step process, finding at step one that plaintiff's medically determinable impairments of "bad knees, bad right ankle and lower back problems" could reasonably be expected to cause the symptoms plaintiff alleged. (R. at 13–14.) At step two, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with plaintiff's residual functional capacity ("RFC") assessment.[7] (R. at 14.)

When evaluating the intensity and persistence of plaintiff's pain, the ALJ sufficiently addressed the factors at step two of the credibility analysis, considering a wide range of evidence from the record. See 20 C.F.R. §§ 404.1529, 416.929 (setting forth the factors to be considered and directing the ALJ to evaluate a claimant's subjective complaints of pain based on the entire case record.) As to the first factor, the claimant's daily activities, the ALJ stated that, despite plaintiff's claimed limitations, "he reported that he prepares his own meals, does laundry, cleans, drives, and shops." (R. at 13.) The ALJ observed that plaintiff testified "he gets pain and tingling in

_____

[7] The ALJ's treatment of plaintiff's RFC assessment is discussed

17

his hands and cannot do a whole lot of writing" but that he is able to "button and zip, hold a comb or toothbrush, open car doors and hold a steering wheel." (Id.)  The ALJ also noted that despite plaintiff's claimed limitations, he "testified that he drives eight or nine friends to and from work every day, averaging about $40 per day after expenses." (Id.)

As to the location, duration, frequency, and intensity of plaintiff's pain, the ALJ noted that plaintiff suffers daily back pain and that with pain medication and muscle relaxants "his back pain is generally five to six on pain scale of one to ten." (R. at 13.)  She further noted plaintiff's testimony that "his knee bothers him" and that he "has daily pain in the ankle." (Id.)

The ALJ also acknowledged precipitating or aggravating factors of "rainy days or cold weather" with respect to plaintiff's knee and the swelling that results in plaintiff's ankle if he twists it while walking. (Id.)  As to medications, the ALJ stated that plaintiff was taking pain medication and muscle relaxants every six hours and noted that "with these medications his back pain is generally five to six on pain scale of one to ten" (Id.)  The ALJ also stated that plaintiff denied side effects from medication.

The ALJ considered treatment and other measures plaintiff has taken for relief when she observed that plaintiff "uses a

---

in detail in Part III.D.

back support that he purchased on his own" and "uses hard braces
on his knee and ankle." (Id.)  The ALJ also noted that plaintiff
testified he gets pain and tingling in his hands but "there is no
treatment documented for hand symptoms." (Id.)

In her decision, the ALJ highlighted inconsistencies between
plaintiff's allegations in this case and his medical record.  The
ALJ observed that there was no mention in Dr. Kurup's record of
plaintiff being struck by a car when he was 5, an accident when
he was 9, or the head-on collision in 1991, all incidents
plaintiff had reported as, "Things you also need to know!" on a
function report filed with the Social Security Administration.
(R. at 10, 14, 148, 243.)  The ALJ also noted that plaintiff told
Dr. Kurup he had right ankle pain from a fall when he was 13
years old.  (R. at 14, 243.)  Turning to plaintiff's statements
to Dr. Zamani, the ALJ observed that Dr. Zamani's notes contained
no mention of plaintiff telling him about being hit by a car when
he was 5 nor the fall plaintiff suffered when he was 13 that he
had reported to Dr. Kurup.  (R. at 15.)  The ALJ also noted that
plaintiff told Dr. Zamani that he did not drive even though he
testified in the hearing otherwise.  (R. at 15, 47, 277.)  These
facts, taken as a whole, indicated to the ALJ that plaintiff's
statements concerning the "intensity, persistence and limiting
effects" of his pain were not credible because his "allegations
[were] inconsistent throughout the record and not supported by

the limited medical evidence" presented in the case.  (R. at 14.)

Based on the above, the undersigned finds that the ALJ considered and applied each of the requisite step two factors and concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (R. at 14.) The ALJ specifically referred to ample evidence of record to explain her analysis of plaintiff's pain and her conclusion that plaintiff's statements were not credible.  In sum, the ALJ relied upon substantial evidence in the record when she concluded that plaintiff's pain did not result in functional limitations as severe as those proposed by plaintiff.  Accordingly, there is no basis for remand on this issue.

### D. **The ALJ's RFC Determination**

Plaintiff contends the ALJ's conclusion that the plaintiff retained the residual functional capacity to perform sedentary work was not supported by substantial evidence and was the result of an erroneous evaluation of medical opinion evidence.  (ECF No. 15-2 at 30-32.)  The Commissioner responds that substantial evidence supports the ALJ's RFC assessment and that the ALJ's evaluation of medical source opinions in formulating her assessment was consistent with the requirements of SSR 96-5p. (ECF No. 28-1 at 17-18.)

At Step Four of the sequential analysis, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This assessment is an administrative finding of fact formulated exclusively by the ALJ.  20 C.F.R. §§ 404.1546(c), 416.946(c).  The ALJ makes the RFC determination based upon all the relevant medical evidence and other evidence in the claimant's case record.  20.C.F.R. §§ 404.1520(e), 416.920(e).  If the ALJ concludes the claimant retains the RFC to perform past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the ALJ concludes the claimant does not retain the RFC to perform past relevant work, then at Step Five the ALJ determines whether the claimant is capable of some other work based on the claimant's RFC, age, education, and past work experience.  If the claimant is capable of other work, the claimant is not disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987).

In this case, after weighing the medical evidence and other evidence in the record, the ALJ concluded that the record established plaintiff was "limited by his impairments and [was] unable to perform the type of work he ha[d] done in the past," but that plaintiff was, however, "able to perform at least a range [of] sedentary work activities."  In making this finding,

the ALJ "considered all symptoms and the extent to which [they could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 12.) In considering plaintiff's symptoms, the ALJ followed the requisite two-step process, concluding the plaintiff's testimony with respect to the "intensity, persistence, and limiting effects" of his symptoms was not credible to the extent it was inconsistent with the RFC assessment, "inconsistent throughout the record," and "not supported by the limited medical evidence." (R. at 13-14.)[8] The ALJ also considered opinion evidence of record, declining to afford "controlling weight, or even great weight" to the opinion of treating physician Dr. Madarang-Lewis, affording "some weight" to the opinion of consultative physician Dr. Ajit Kurup and declining to afford "great weight" to the statement of consultative physician Dr. Mohammed Zamani that plaintiff was unable to work.[9] (R. at 12-16.)

Finally, the ALJ considered the Physical Residual Functional Capacity Assessments completed by the state agency physicians in April and June 2008, which indicated that "plaintiff could lift up to 20 pounds occasionally and ten pounds frequently, but that he could stand and/or walk only two hours a day." (R. at 16,

---

8 The ALJ's credibility determination is discussed in Part III.C.

9 The weight the ALJ afforded to opinion evidence is discussed in Part III.B.

250-57, 261-268.)  The ALJ noted the RFC assessments contained non-exertional limitations for "no climbing of ladders, ropes and scaffolds; only occasional climbing of ramps and stairs; occasional balancing, stopping, kneeling, crouching and crawling; and no exposure to hazards (machinery, heights, etc.)."  (Id.) The ALJ concluded that the medical evidence, consultative examination reports and hearing testimony all supported a finding that plaintiff "could lift up to 20 pounds occasionally and ten pounds frequently, but that he could stand and/or walk only two hours a day." (R. at 16.)

In reviewing the ALJ's decision, it should be noted that it is not the court's role in reviewing for substantial evidence to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ.  Craig, 76 F.3d at 589.  In sum, the undersigned finds the ALJ relied on substantial evidence in the record to reach her RFC assessment and conclusion that plaintiff could perform "sedentary work," and this evidence is consistent with the definition of "sedentary work" provided by 20 C.F.R. § 404-1567(a) and § 416.967(a).[10]  As the ALJ's RFC determination is supported by substantial evidence

---

10 "Sedentary work" is defined as that involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404-1567(a), 416.967(a).

in the record, there is no basis for remand on this issue.

**IV.  <u>Conclusion</u>**

     For the foregoing reasons, the court denies plaintiff's motion for summary judgment (ECF No. 15) and grants defendant's motion for summary judgment.  (ECF No. 28.)  A separate Order shall issue.


Date:<u> 11-10-11      </u>        <u>      /s/                      </u>
                                  Beth P. Gesner
                                  United States Magistrate Judge